# EXHIBIT A

FILED

STATE OF NORTH CAROLINA   2024 SEP -9 A II: 07   IN THE GENERAL COURT OF JUSTICE

COUNTY OF NEW HANOVER   NEW HANOVER CO...   SUPERIOR COURT DIVISION

      FILE NO.: _____

      BY

| | | |
|---|---|---|
| 2830 HIGHWAY 421 OWNER, LLC, | ) | |
| Plaintiff | ) | |
| | ) | COMPLAINT |
| v. | ) | |
| | ) | **A TRUE COPY** |
| GMS SOUTHEAST, INC. | ) | CLERK OF SUPERIOR COURT |
| Defendant | ) | NEW HANOVER COUNTY |
| | | BY: *Alizay Benson* |
| | | Deputy Clerk of Superior Court |

NOW COMES Plaintiff, 2830 Highway 421 Owner, LLC (hereinafter "Landlord"), who demands a trial by jury on all issues and hereby makes this Complaint against Defendant GMS Southeast, Inc. (hereinafter "Tenant") alleging and saying as follows:

## PARTIES, JURISDICTION, AND VENUE

1. Plaintiff is a Delaware limited liability company registered to do business in North Carolina with the North Carolina Secretary of State.

2. Tenant is a Florida corporation registered to do business in North Carolina and in fact has and upon information and belief continues to do substantial business in New Hanover County, North Carolina, including in the premises leased to Tenant from Landlord.

3. Tenant can be served via its registered agent Corporation Service Company at its registered agent address: 2626 Glenwood Avenue, Suite 550, Raleigh, North Carolina 27608.

4.     Tenant is subject to personal jurisdiction in North Carolina pursuant to N.C. Gen. Stat. § 1-75.4

5.     Venue is proper in New Hanover County pursuant to the provisions of N.C. Gen. Stat. § 1-80.

## FACTS

### *Background of the Parties and Agreement to the Lease*

6.     On or about June 21, 2012, OmniSource Southeast, LLC and Colonial Materials of Fayetteville, Inc. entered into a lease (hereinafter the "Lease") for a potion for approximately 44,570 square feet of warehouse space contained in the building situated in New Hanover County at 2820 US Highway 421 North, Wilmington, North Carolina 28401 (hereinafter the "Building") as well as certain delineated outdoor areas at the same location. The address of the parcel on which the Building is located is 2900 US Highway 421 North, Wilmington, North Carolina. A true and accurate copy of the Lease is attached hereto as Exhibit A.

7.     Landlord is the successor in interest to OmniSource Southeast, LLC.

8.     On or about July 31, 2014, Colonial Materials of Fayetteville, Inc. and Colonial Materials, Inc. executed and filed with the Secretary of State a document titled Articles of Merger of Colonial Materials of Fayetteville, Inc. with and into Colonial Materials, Inc. ("Colonial Merger").

9.     As a result of the Colonial Merger, effective August 1, 2014, the surviving corporation was Colonial Materials, Inc.

10.     Following August 1, 2014, Colonial Materials, Inc. occupied the Building and made payments pursuant to the Lease.

11.     On or about January 26, 2021, OmniSource Southeast, LLC and Colonial Materials, Inc. extended the lease for an additional three (3) year period pursuant to the terms of the original Lease. This final extension expired on July 31, 2024.

12.     On or about February 1, 2023, GMS Southeast, Inc. executed and filed with the Secretary of State a document titled Articles of Merger (hereinafter "GMS Merger").

13.     As a result of the GMS Merger, Colonial Materials, Inc. and Capitol Materials Coastal, Inc. merged and the surviving corporation became GMS Southeast, Inc.

14.     Following February 1, 2023, GMS Southeast, Inc. occupied the Building and made payments pursuant to the Lease.

15.     As a result of the Colonial Merger and GMS Merger, GMS Southeast, Inc., is and was the successor in interest and is bound by all the terms of the Lease.

### *Relevant Lease Provisions*

16.     Paragraph 6(a) of the Lease provides in relevant part:

Maintenance and Repairs. (a) Tenant's Repairs. Unless caused by the negligence or willful acts or omissions of Landlord, its agents, employees or contractors (in which case Landlord shall be responsible), Tenant shall, at its own expense, maintain and make all necessary repairs and replacements to the Leased Property and to the window glass, fixtures, and all other appliances and appurtenances belonging thereto, and all equipment used in connection with the Leased Property. Such repairs and replacements shall be made promptly as and when necessary and in a good and workmanlike manner.

17.     Paragraph 8 of the Lease provides:

Surrender of the Leased Property. Tenant shall, on the last day of the Lease Term, or upon the sooner termination of the Lease, peaceably and quietly surrender the Leased Property to Landlord, in broom-clean condition and otherwise, in as good condition and repair as at the commencement of the term, natural wear and tear of each and damage from casualty or governmental taking excepted. Any trade fixtures or personal property belonging to Tenant or to any subtenant, if not removed at such termination, and if Landlord shall so elect, shall be deemed abandoned and become the property of Landlord without any payment or offset therefor.

18.     Paragraph 30(f) of the Lease provides: "In the event either Landlord or Tenant shall retain the services of an attorney to enforce any provision of this Lease, the prevailing party **shall be reimbursed by the other in the amount of its reasonable attorneys' fees** and other costs actually incurred." (emphasis added).

19.     Paragraph 31 of the Lease provided for a $9,000.00 security deposit.

### Tenant Caused Substantial and Excessive Damage

20.     Tenant vacated the property on or about July 31, 2024, at the expiration of the Lease.

21.     Upon entering the property, Landlord discovered that Tenant had caused substantial and extensive damage, far in excess of natural wear-and-tear, to the Building.

22.     By way of example, and not limitation, Tenant caused or permitted the exterior doors to be broken, permitting humid, moist outdoor air to enter the building resulting in other damage:





23.     Tenant left hazardous materials that required specialized disposal:



24.     In addition to hazardous materials, Tenant left a dumpster and other piles of debris:





25. Tenant damaged the concrete floor:



26.     Tenant destroyed concrete walls that are on the verge of

collapsing:



27.     Despite the requirement that the Building be vacated in a broom

swept condition, Tenant left debris throughout the office portion of the Building:





28.     Tenant also left moldy food in the refrigerator and on the floors resulting in pests:







29.　Tenant also caused damage to the exterior Building walls which require new siding:





30. Tenant caused extensive gouging to the drywall that must be replaced and repainted:



31.     Multiple bathroom toilets and sinks have also been damaged or are non-operational.

32.     The preceding examples of damages are just that, examples, and not a limitation on the extensive damages that have been caused by Tenant.

33.     Damages continue to be uncovered and discovered.

34.     All of the preceding damages are a breach of Tenant's obligations to maintain and make repairs to the Building.

35.     All of the preceding damages are far in excess of natural wear and tear in breach of the Lease.

36.     All of the preceding damages reflect Tenant's breach of its obligation to return the Building to Landlord in "broom-clean condition and otherwise, in as good condition and repair as at the commencement of the term..."

37.     The cost of remedying the extensive damages caused by Tenant is estimated to exceed three hundred thousand dollars ($300,000.00).

38.     Landlord has also incurred reasonable attorneys' fees and other costs as a result of enforcing the terms of and remedying Tenant's breach of the Lease.

39.     All conditions precedent have been performed or have occurred such that Landlord may bring this Complaint.

## FIRST CLAIM FOR RELIEF
### (Breach of Contract)

40.     Landlord incorporates by reference the foregoing allegations as if fully set forth herein.

41.     The Lease is a valid contract between Landlord and Tenant.

42.     Tenant materially breached the Lease as set forth above by failing to maintain and repair the Building and by causing substantial and excessive damages as well as other ways that may be shown during the discovery and trial of this matter.

43.     As a proximate cause of Tenant's breach of the Lease, Landlord has been damaged in an amount far in excess of Twenty-Five Thousand Dollars ($25,000.00) and to be determined, plus pre- and post-judgment interest, costs, and attorneys' fees as required by the Lease and as allowed by law.

44.     Landlord demands a trial by jury as to all issues.

WHEREFORE, Landlord prays the Court order as follows:

a. Enter judgment against Tenant for breach of contract and award Landlord all its monetary damages against Tenant in an amount in excess of $25,000.00, the precise amount of which will be proven at the trial of this matter.

b. Award Landlord interest at the legal rate from and after the date of first breach of the contract as well as post-judgment interest.

c. Award Landlord its reasonable attorneys' fees as provided by the Lease.

d. Award Landlord all of its court costs and other expenses as allowed by Law and the Lease.

e. Award Landlord such other and further relief as this Honorable Court deems just and proper.

f. Order Landlord shall have a jury trial on all issues so triable.

[Signature Page Follows]

This the 9th day of September 2024.

Jeffery I. Stoddard
N.C. State Bar I.D. No.:  56866
email:  docket@wardandsmith.com*
email:  jistoddard@wardandsmith.com**
Ryal W. Tayloe
N.C. State Bar I.D. No.:  010549
email:  rwt@wardandsmith.com**
For the firm of
Ward and Smith, P.A.
Post Office Box 7068
Wilmington, NC  28406-7068
Telephone:  910.794.4800
Facsimile:  910.794.4877
Attorneys for Plaintiff

*This email address must be used in order to effectuate service under Rule 5 of the North Carolina Rules of Civil Procedure.

** Email address to be used for all communications other than service.

ND:4859-5936-5086, v. 1

## LEASE AGREEMENT

This LEASE AGREEMENT (the "Lease") is made and entered into this $21$ day of JUNE , 2012, by and between **OmniSource Southeast, LLC, a North Carolina Limited Liability Company ("Landlord"),** with an address of 7575 West Jefferson Blvd. Fort Wayne, Indiana 46804, and **Colonial Materials of Fayetteville, Inc., a North Carolina Corporation ("Tenant")** with an address of 570 Belt Boulevard, Fayetteville, North Carolina 28301.

    1.    <u>Leased Property</u>.  For and in consideration of the rents, covenants and agreements hereinafter set forth, Landlord hereby leases to Tenant the real property described on <u>Exhibit "A"</u>, attached hereto and incorporated herein by reference, together with all improvements located thereon and all easements and rights appurtenant thereto (hereinafter collectively called the "<u>Leased Property</u>").

    2.    <u>Initial Term</u>.  The Initial Term of this Lease shall be for three (3) years and two (2) months, commencing on June 1, 2012 (the "<u>Commencement Date</u>"), and ending on July 31, 2015, both dates inclusive, unless sooner terminated or extended as herein provided (such term, as extended, the "<u>Lease Term</u>").  The term "<u>Lease Year</u>", as used herein, shall mean the period of time from the Commencement Date through the end of the twelfth (12th) full calendar month after August 1, 2012, and each succeeding twelve (12) month period thereafter.  Thus, the first Lease Year shall consist of fourteen (14) complete calendar months.

    (a)    <u>Option to Extend</u>.  Tenant shall have the right, privilege and option to extend the term of this Lease for three (3) successive periods of three (3) years each under the same terms and conditions of this Lease then in effect, except that the rental paid for any option period (an "<u>Option Period</u>") shall be the amount indicated in Paragraph 3 below.  Tenant, if it elects to exercise any option, shall do so by giving Landlord written notice at least one hundred eighty (180) days prior to the expiration of the initial Lease Term or the then-current Option Period, as the case may be.

    (b)    <u>Month to Month Tenancy</u>.  If Tenant shall remain in possession of the Leased Property after the expiration of the Lease Term and without any express agreement of the parties hereto, Tenant shall be a month-to-month tenant upon all the same terms and conditions as contained in this Lease, including, without limitation, the payment of rent, which shall be based on that rate in effect during the last month of the preceding term.

    (c)    <u>Early Termination</u>.  Tenant shall have the one time right to terminate this lease on or before August 1, 2012 if and only if Tenant can not obtain all necessary permits to legally occupy the premises for the use stated in Section 4.

    3.    <u>Rent</u>.

    (a)    Tenant shall pay to Landlord in lawful money of the United States, throughout the Lease Term, in equal monthly installments in advance on the first day of each calendar month throughout the term hereof, monthly rental payments (the "<u>Rent</u>") as follows:

(i)     For the Initial Term, a Rent of **Nine Thousand and 00/100 Dollars ($9,000)** per month (the rent for October, 2012 shall be paid on or before signing of the lease);

(ii)     Rent for each Option Period shall be as follows:

(A)     For the First Option Period, a Rent of **Nine Thousand Six Hundred Seventy Five and 00/100 Dollars ($9,675)** per month;

(B)     For the Second Option Period, a Rent of **Ten Thousand Four Hundred and 00/100 Dollars ($10,400)** per month;

(C)     For the Third Option Period, a Rent of **Eleven Thousand One Hundred Eighty and 00/100 Dollars ($11,180)** per month.

(b)     In the event the Lease Term commences on a day other than the first of a month or ends on a day other than the last day of a month, Net Rent shall be prorated for such partial months based upon the actual number of days in such month during which the Lease Term falls.

(c)     During the Term of this Lease, as may be extended, Landlord shall pay all real property taxes and provide electric energy in accordance with Exhibit C. Tenant shall pay all personal property taxes and all other charges relating to the Leased Property not specifically assumed by the Landlord pursuant to the terms of this Lease.

(d)     **Notwithstanding the foregoing, Tenant shall have no obligation to pay Rent for the first four (4) months of the Initial Term.**

4.     <u>Use</u>. Tenant may use and occupy the Leased Property as a sales and distribution center for building materials and supplies. Tenant shall not use or knowingly permit any part of the Leased Property to be used for any other purpose without the consent of Landlord. In no event shall the Leased Property be used for the purchase, storage, processing or sale of scrap metals of any type.

5.     <u>Quiet Enjoyment</u>. Tenant, upon paying the Rent and performing all the other terms of this Lease, shall quietly have and enjoy the Leased Property during the term of this Lease and any extensions thereof without hindrance or molestation by anyone claiming by, through, or under Landlord.

6.     <u>Maintenance and Repairs</u>.

(a)     <u>Tenant's Repairs</u>. Unless caused by the negligence or willful acts or omissions of Landlord, its agents, employees, or contractors (in which case Landlord shall be responsible), Tenant shall, at its own expense, maintain and make all necessary repairs and replacements to the Leased Property and to the window glass, fixtures and all other appliances and appurtenances belonging thereto and all equipment used in connection with the Leased Property. Such repairs and replacements shall be made promptly as and when necessary and in a good and workmanlike manner. On default of

927439.2

2

Tenant in making such repairs or replacements, Landlord may, but shall not be required to, make such repairs and replacements for Tenant's account, and the reasonable expense thereof (actually incurred) shall constitute and be collectible as additional rent. Reasonable wear and tear, damage by fire or other casualty, taking by eminent domain and repairs, replacements and work which are Landlord's responsibility shall be excepted from Tenant's repair and maintenance responsibility.

(b) <u>Repairs by Landlord</u>. Landlord agrees to keep in good and working repair and order the following: the roof, foundation, exterior walls, fire suppression system, septic system, parking lots and the electrical and plumbing systems external to the Leased Property (*i.e.*, the leads from the tie-ins to the public utilities to the improvements located on the Leased Property). Tenant shall not be responsible for any of the foregoing (except where necessitated by the negligence or willful misconduct of Tenant or Tenant's employees, servants, agents, contractors or invitees, or by Tenant's breach of its obligations under this Lease unless such damage is covered by insurance, in which case, such damage shall be addressed as provided in Section 13 of this Lease). Any repairs required by Landlord hereunder shall be performed by Landlord or its contractors within thirty (30) days (subject to extensions for force majeure or for repairs which, with the exercise of reasonable diligence, require more than thirty (30) days to repair) after receiving written notice by Tenant. If Landlord fails to make the repairs or replacements required by this Section 6(b), Tenant may, but shall not be required to, make such repairs and replacements for Landlord's account, and the reasonable expense thereof (actually incurred) shall be reimbursed by Landlord within twenty (20) days of Landlord's receipt of an invoice therefor.

7. <u>Compliance with Law</u>. Tenant shall, throughout the term of this Lease, at its sole expense, promptly comply with all laws and regulations of all federal, state, county and municipal governments and appropriate departments, commissions, boards and offices thereof, and the orders and regulations of the National Board of Fire Underwriters, or any other body now or hereafter exercising similar functions, which may be necessary by reason of Tenant's use or occupancy of the Leased Property or operation of its business. It is mutually agreed, however, between Landlord and Tenant, that if, in order to comply with such requirements, the cost to Tenant shall exceed Twenty Five Thousand and 00/100 Dollars ($25,000) then Tenant shall have the right to terminate this Lease by giving written notice of termination to the Landlord, which termination shall become effective sixty (60) days after receipt of such notice, and which notice shall eliminate necessity of compliance with such requirement by Tenant unless the Landlord shall, before the termination becomes effective, pay to the party giving notice all cost of compliance in excess Twenty Five Thousand and 00/100 Dollars ($25,000) or secure payment of such sum in a manner reasonably satisfactory to the Tenant. Notwithstanding any provisions or limitations in this paragraph to the contrary, Tenant shall be responsible for any and all costs and expenses arising from any violations of environmental laws or regulations caused by Tenant's activities or occupancy of the Leased Property. Tenant's responsibility to make those repairs, replacements, modifications, alterations, installations, additions and improvements to the Leased Property required by laws, regulations, governmental orders and insurance requirements shall be limited to those instances where caused by the use by Tenant of the Leased Property.

8.    Surrender of the Leased Property.  Tenant shall, on the last day of the Lease Term, or upon the sooner termination of this Lease, peaceably and quietly surrender the Leased Property to Landlord, in broom-clean condition and otherwise, in as good condition and repair as at the commencement of the term, natural wear and tear of each and damage from casualty or governmental taking excepted.  Any trade fixtures or personal property belonging to Tenant or to any subtenant, if not removed at such termination, and if Landlord shall so elect, shall be deemed abandoned and become the property of Landlord without any payment or offset therefor.

9.    Alterations, Additions and Improvements.

(a)    Tenant shall not make any material alterations, additions or improvements to the Leased Property without the prior consent of Landlord.  Notwithstanding the foregoing, Landlord consents and grants approval to the alterations, additions and improvements Tenant intends to make as stated in Exhibit C.  Any alteration, addition or improvement made by Tenant after such consent shall be completed in a good and workmanlike manner and in accordance with all applicable codes and regulations.  Except as otherwise set forth in the first sentence of this Section 9(a), Tenant may make any other alterations, additions or improvements to the Leased Property as Tenant may elect, all at its sole cost and expense, provided that Tenant does so in a good and workmanlike manner and in accordance with all applicable codes and regulations.  All alterations, additions and improvements made pursuant to this Section 9(a) shall be surrendered with the Leased Property upon the expiration or earlier termination of the Lease Term and shall thereupon become the property of Landlord without any compensation to Tenant.

(b)    Tenant shall indemnify Landlord against and hold Landlord harmless from any mechanic's lien or other lien arising out of the making of any alterations, repairs, additions or improvements by Tenant.

10.    Events of Default.  Any of the following circumstances shall be deemed a "Default" or "Event of Default" by Tenant.

(a)    If Tenant shall fail to make any payment of any Rent when due and (i) such failure is not cured within ten (10) days after written notice from Landlord; or (ii) such failure has occurred twice within the preceding twelve (12) month period;

(b)    If Tenant shall fail in the performance of any covenant of this Lease (other than the covenant for the payment of Rent) and (i) if such default is not cured within thirty (30) days after written notice thereof has been given to Tenant by Landlord; or, if such failure shall be of such nature that it cannot be cured completely within such thirty (30) day period, if Tenant shall not have promptly commenced to cure the default within such thirty (30) day period or shall not thereafter proceed with reasonable diligence and in good faith to remedy such default; or (ii) the same type of default has occurred in the preceding twelve (12) month period; or

(c)    If Tenant shall be adjudicated bankrupt, make a general assignment for the benefit of creditors, or if a permanent receiver or trustee in bankruptcy shall be appointed

for Tenant's property and such appointment is not vacated within ninety (90) days; or if Tenant shall file a petition seeking relief under any bankruptcy or creditors' rights laws; or if such a petition shall be filed against Tenant and the same shall not have been dismissed within ninety (90) days.

11.     Breach/Default by Tenant; Remedies of Landlord.  Upon the occurrence of an Event of Default, Landlord shall have the option, subject to any applicable cure periods to do any one of the following:

(a)     Landlord may (but shall not be obligated to) cure such Default on behalf of and at the expense of Tenant, and Tenant shall reimburse Landlord for any and all reasonable sums so expended by Landlord.  Such expenses shall include, but shall not be limited to, reasonable attorneys' fees actually incurred and the reasonable costs of instituting, prosecuting or defending any action or proceeding instituted by reason of such Default by Tenant (provided Landlord prevails in such action or proceeding).  Should Tenant, pursuant to the terms of this Lease, become obligated to reimburse or otherwise pay to Landlord any sum of money in addition to the specific rent herein provided for, then the amount thereof shall be deemed additional rent and may, at Landlord's option, be added to and collected as part of any subsequent installment of the specific rent due and payable hereunder.

(b)     Landlord may terminate Tenant's right of possession or this Lease, by written notice to Tenant specifying the date of termination in such notice, and, on or after such date, enter upon and take possession of the Leased Property and expel or remove Tenant and any other person who may be occupying said Leased Property or any part thereof, by entry, dispossessory suit or otherwise, without thereby releasing Tenant from any liability hereunder; and, if Landlord so elects, Landlord may make such alterations, redecoration and repairs as Landlord, in its reasonable judgment, may deem necessary to relet the Leased Property, and Landlord may relet the Leased Property or any portion thereof for such term or terms and at the best price obtainable by reasonable effort and upon such other terms and conditions as Landlord in its sole discretion may deem advisable, with or without advertisement, or by private negotiations.  Upon each such reletting, all rentals and other sums received by Landlord from such reletting shall be applied:  first, to the payment of any indebtedness other than Net Rent due hereunder from Tenant to Landlord; second to the payment of any reasonable costs and expenses of such reletting actually incurred by Landlord, including lease assumptions, reasonable brokerage fees and attorneys' fees actually incurred; and the residue, if any shall be held by Landlord and applied in payment of future Net Rent as the same may become due and payable hereunder.  Notwithstanding anything to the contrary contained herein, in the event the term of such subsequent lease extends beyond the then-current Lease Term, Tenant shall have no obligations whatsoever with respect to or under such extended period.  Tenant shall be responsible to Landlord for any delinquency between the Net Rent and additional rental due hereunder and amounts received by Landlord from such reletting during the remainder of the then-current Lease Term; however, Tenant shall not be entitled to any excess realized by Landlord.

(c)     The Landlord may immediately collect from Lessee by any lawful means: (i) any rent due and unpaid; (ii) the balance of the total rent contracted for the Initial Term or extension, as applicable, and Tenant shall be obligated to pay this balance without regard to (A) the existence of this Lease, or its termination for any reason or by any means; or (B) Tenant's occupancy or possession of the Premises; (iii) any money advanced or expenditure made by Lessor under this Lease or as allowed by law; (iv) any other amount which Tenant owes Landlord under this Lease or as allowed by law; and (v) interest, at the rate of twelve percent (12%) per annum on any amount due to Landlord.

(d)     Pursuit of any of the foregoing remedies shall not preclude pursuit of any other remedies herein provided or any other remedies provided by law. Landlord shall have the duty to mitigate any possible damages which may be incurred pursuant to any such default by Tenant. Any notice in this provision may be given by Landlord or its attorney.

12.     Breach/Default by Landlord; Remedies of Tenant. In the event the Landlord shall fail to comply with any provisions of this Lease which are the responsibility of Landlord to perform and the same have not been fully performed within thirty (30) days after written notice from Tenant (provided, that in the event the default is of such a nature that it cannot be cured within thirty (30) days but is otherwise capable of cure, and Landlord commences such cure within said 30-day period and diligently pursues the same to completion, then Landlord shall have such additional time as may be reasonably necessary to cure such default), then Tenant shall have the option (i) to cure such default for the account of Landlord (without any obligation so to do), in which case, Landlord shall reimburse Tenant the reasonable costs of such cure actually incurred within twenty (20) days after Landlord's receipt of an invoice therefor; or (ii) to pursue any and all remedies available to it at law and in equity, such remedies being cumulative and not exclusive.

13.     Damage to or Destruction of Leased Property. If the Leased Property is totally destroyed by storm, fire, lightning, earthquake or other casualty, this Lease shall terminate as of the date of such destruction, and rental shall be accounted for as between Landlord and Tenant as of that date. If the Leased Property shall be partially damaged or destroyed by such casualty, then Landlord shall deliver to Tenant within thirty (30) days of such casualty a written notice stating the reasonable estimate of time and cost necessary to repair such damage (the "Damage Notice"). In the event the Damage Notice indicates that the repairs will require more than sixty (60) days to complete or will cost more money than Landlord is likely to receive from insurance proceeds (unless Landlord pledges in writing to cover any discrepancy between the actual cost to repair such damage and the insurance proceeds Landlord will receive), then Landlord or Tenant shall have the right to terminate this Lease in writing delivered to the other party within thirty (30) days of delivery of the Damage Notice. In the event the Lease is not terminated as provided herein or the Damage Notice indicates that the repairs will likely require sixty (60) days or less to complete and will cost an amount less than or equal to the insurance proceeds Landlord is likely to receive, then, this Lease shall remain in full force and effect, all rental amounts due hereunder (including, without limitation, Net Rent) shall abate until such time as the repairs shall be substantially complete in the proportion the portion of the Leased Property which is untenantable (in Tenant's reasonable opinion) bears to the total Leased Property, and Landlord shall complete such repairs within sixty (60) days after the date of the Damage Notice.

14. <u>Insurance</u>.

(a)     Throughout the term of this Lease and any extensions thereof, Landlord shall carry at its sole expense, and maintain in full force and effect, fire and extended coverage insurance on the buildings of the Leased Property in an amount at least equal to their replacement value.

(b)     Throughout the term of this Lease and any extensions thereof, Tenant shall carry at its sole expense, and maintain in full force and effect, fire and extended coverage insurance on Tenant's contents, furniture, fixtures, equipment, and other property removable by Tenant under the provisions of this Lease.

(c)     Throughout the term of this Lease and any extensions thereof, Tenant shall carry at its sole expense, and maintain in full force and effect, general liability insurance insuring Tenant and Landlord in an amount not less than $5,000,000.00 combined single limit from a carrier reasonably satisfactory to Landlord.  This requirement can be met with a combination of primary and umbrella general liability insurance.

(d)     Landlord and Tenant each waive, and each insurance policy carried by either Landlord or Tenant shall contain a provision whereby the insured and insurer thereunder waive, any rights of subrogation against the other party on account of any loss or damage insured against under such policy, provided that such waiver of the right of subrogation shall not be operative in any case where the effect is to invalidate such insurance coverage.

(e)     To the fullest extent permitted by law, Landlord and Tenant each waive all right of recovery against the other for, and agree to release the other from liability for, loss or damage to the extent such loss or damage is covered by valid and collectible insurance in effect at the time of such loss or damage or which is required to be covered pursuant to the terms of this Lease, provided, however, that the foregoing release by each party shall not apply to the extent of any deductible paid by either party under the terms of such party's insurance policy (up to a maximum of $5,000.00); provided, further, however, that the foregoing release by each party is conditioned upon the other party carrying insurance with the above-described waiver of subrogation, and if such coverage is not obtained or maintained by either party, then the other party's foregoing release shall be deemed to be rescinded until such waiver is either obtained or restated.

(f)     All policies of insurance required of Tenant under this Lease (i) shall be written by insurers reasonably acceptable by Landlord which are licensed to do business in the state in which the Leased Property is located, and (ii) shall contain provisions obligating the insurer to notify the Landlord in writing at least thirty (30) days prior to any change, cancellation, or nonrenewal of such policies taking effect.  Tenant agrees to provide the Landlord with certificates of insurance evidencing such coverage required hereunder within fifteen (15) days of a request therefor.

15. <u>Condemnation and Eminent Domain</u>.

(a)     If the whole of the Leased Property, or such portion thereof as will make the Leased Property unusable for the purpose herein leased (as determined by Tenant in its reasonable discretion), shall be condemned by any legally constituted authority for any public use or purpose, or sold under threat of condemnation, then, in any of said events the term hereby granted shall cease from the time when possession or ownership thereof is taken by public authorities and rental shall be accounted for as between Landlord and Tenant as of that date. Such termination, however, shall be without prejudice to the rights of either Landlord or Tenant to recover compensation and damage caused by condemnation from the condemnor. It is further understood and agreed that neither the Tenant, nor Landlord, shall have any rights in any award made to the other by any condemnation.

(b)     In the event of a partial taking or condemnation which does not make the Leased Property unusable for the purpose herein leased, so that this Lease is not thereby terminated, (i) Landlord shall repair any damage caused by such taking or condemnation so as to restore the Leased Property as nearly as possible to its condition prior to such taking or condemnation within sixty (60) days after such taking, and the rent and other charges due from Tenant hereunder shall be equitably abated until Landlord completes such repairs, all as provided in Section 13 hereof, and (ii) the rent and other charges due from Tenant hereunder shall be permanently equitably abated to account for any diminution of the Leased Property resulting from such taking or condemnation. If Landlord is unable to complete such repair and restoration within sixty (60) days from the taking, Tenant shall have the right to terminate this Lease.

16.     Assignment and Subletting. Tenant may assign or sublet all or any portion of the Leased Property for the remainder of the Lease Term only upon the prior written approval of Landlord. In the event Landlord shall not have responded to Tenant's request for consent within twenty (20) days after Tenant's request therefor, Landlord shall be deemed to have denied the proposed assignment or subletting.

17.     Option to Purchase. INTENTIONALLY OMITTED/NOT APPLICABLE.

18.     Right of First Refusal. INTENTIONALLY OMITTED/NOT APPLICABLE

19.     Release of Corporate Agents. In any case where a corporation is or shall be Tenant or Landlord hereunder, no recourse under or upon any obligation, covenant or agreement of this Lease otherwise permitted by any statute or rule of law shall be had against any incorporator, subscriber, stockholder, officer or director, past, present or future, of such corporation, either directly or through the corporation.

20.     Notice. Any notice required hereunder by either party to the other shall be in writing and shall be deemed to be duly given only if delivered (i) via email; and (ii) personally or by a nationally-recognized overnight delivery service, or mailed by certified or registered mail, postage prepaid, addressed to Tenant at the Leased Property, and to Landlord at the addresses set forth in Exhibit B. Notices shall be effective on the earlier of (A) actual receipt or refusal to accept receipt; (B) one (1) business day after depositing the same with the overnight delivery service or (C) three (3) business days after mailing. Delivery to an employee or officer of a party

shall be effective delivery of a notice. Any refusal to accept delivery shall be deemed effective delivery. Any delay in delivery because of a changed address of which no notice has been given shall not affect the effective date of delivery. Any notice may be given by an attorney on behalf of a party. All notice addresses must be in the continental U.S. and all notices must be in the English language.

21.   Binding Effect. This Lease shall be binding upon and inure to the benefit of the heirs, legal representatives, successors and assigns of Landlord and Tenant.

22.   Governing Law. This Lease shall be construed in accordance with and governed by the laws of the State in which the Leased Property is situated.

23.   Time. TIME IS OF THE ESSENCE in this Lease.

24.   Hazardous Substances.

(a)   Tenant shall not use or suffer the use of the Leased Property as a landfill, or dump, or as a site for storage, treatment, or disposal of "Hazardous Wastes," "Hazardous Substances" or toxic substances (as such terms are hereinafter defined), except to the extent done so in compliance with all environmental laws. Tenant shall be liable to Landlord for any and all cleanup costs and any and all other charges, fees or penalties relating to Tenant's use, disposal, transportation, generation or sale of Hazardous Substances on or at the Leased Property. Tenant shall and hereby does agree to pay, protect, defend, indemnify and hold Landlord harmless from and against any and all losses, damages, expenses, fees, claims, costs and liabilities (including, but not limited to reasonable attorneys' fees actually incurred) arising out of or in any manner related to the presence of "Hazardous Substances" at, on or in the Leased Property which directly results from an act or omission during its period of occupancy. The obligations of Tenant under this paragraph shall survive any expiration or termination of this Lease.

(b)   As used herein, "Hazardous Substances" shall mean any (i) "hazardous waste" as defined by the Resource, Conservation and Recovery Act of 1976 (42 U.S.C. Section 6901 et seq.), as amended, and regulations promulgated thereunder; or (ii) any "hazardous, toxic or dangerous waste, substance or material" specifically defined as such in (or for the purposes of) the Comprehensive Environmental Response, Compensation and Liability Act of 1980 (42 U.S.C. Section 9601 et seq.), as amended, and regulations promulgated thereunder.

(c)   Tenant shall not in any manner be liable for, required to contain, remediate, remove or clean up, bear any costs or expenses regarding or have any responsibility whatsoever with respect to, nor does Tenant indemnify Landlord or any other party regarding, any Hazardous Wastes, Hazardous Substances, or toxic substances, materials or wastes or other environmental contaminants which were already on the Leased Property prior to the term of this Lease. Landlord agrees to indemnify and hold Tenant harmless from and against any and all losses, damages, expenses, fees, claims, costs, and liabilities (including, but not limited to reasonable attorneys' fees actually incurred) arising out of or in any manner caused by contaminants already on the Leased

Property prior to the term of this Lease above or by Landlord, its agents, employees, or contractors.

25.  Landlord's Liability.  The liability of Landlord hereunder shall be limited to its interest in the Leased Property.

26.  Subordination.  This Lease shall be subject and subordinate to any bona fide present or future mortgage placed upon the Leased Property by Landlord, provided such mortgagee agrees in writing that the possession of Tenant during the remainder of the Lease Term shall not be disturbed despite any foreclosure or other action by such mortgagee, provided Tenant is not in default hereunder.  As to any mortgage, security deed or deed of trust encumbering the Leased Property as of the date of this Lease, Landlord covenants to deliver such an agreement to Tenant, in form and substance reasonably acceptable to Tenant, within ten (10) days after the date of this Lease.

27.  Removal of Fixtures.  Tenant may, prior to the expiration of the Lease Term, remove all fixtures and equipment which Tenant has placed on the Leased Property, provided Tenant repairs all damage to the Leased Property caused by such removal; provided, however, Tenant shall not remove, under any circumstances, the following:  heating, ventilating, air conditioning, plumbing, electrical and lighting systems and fixtures or door levelers.

28.  Title and Authority.  Landlord represents and warrants to Tenant that (a) Landlord holds good title to the Leased Property and has full power and authority to make this Lease and (b) there are no encumbrances, easements, covenants or restrictions on the Leased Property which would prevent or materially interfere with Tenant's use and enjoyment of the Leased Property as contemplated by this Lease.

29.  Memorandum of Lease.  Upon the request of either party, Landlord and Tenant shall mutually execute and deliver a notice, memorandum or short form of this Lease in recordable form and either party may record such instrument in the applicable registry of deeds. The cost of such recording shall be borne by the party requesting the same.

30.  Special Provisions – Exhibit C.  Not withstanding any contrary provisions hereof, the provisions, if any, contained within EXHIBIT C constitute special provisions and agreements of the parties which shall supersede any provisions of this Lease which are inconsistent with the provisions stated within EXHIBIT C.

30.  Miscellaneous.

(a)  Each party shall itself bear all costs and expenses of fulfilling its obligations under this Lease, except only where specifically provided herein to the contrary.

(b)  This Lease contains the entire agreement of the parties hereto, and no representations, inducements, promises or agreements, oral or otherwise, between the parties, not embodied herein, shall be of any force or effect.  This Lease supersedes any prior or contemporary discussions between the parties hereto with respect to the matters contained herein.

927439.2                                    10

(c)     If any term, covenant or condition of this Lease or the application thereof to any person, entity or circumstance shall, to any extent, be invalid or unenforceable, the remainder of this Lease, or the application of such term, covenant or condition to persons, entities or circumstances other than those which render the same invalid or unenforceable shall not be affected thereby, and each term, covenant or condition of this Lease shall be valid and enforceable to the fullest extent permitted by law.

(d)     No modification of this Lease shall be effective unless made in writing and signed by Landlord and Tenant.

(e)     Landlord and Tenant each represent and warrant to each other that neither has engaged the services of any broker or finder other than Cameron Management, Inc., who represented the Tenant and Cape Fear Commercial, LLC, who represented the Landlord ("Brokers"), whose commissions shall be paid by Landlord.  Landlord and Tenant agree to indemnify and hold the other harmless from and against any and all losses, damages, claims, and liabilities incurred in connection with a breach of the foregoing representation and warranty; provided, however, that Tenant shall not have any obligation to indemnify Landlord against any losses, damages, claims and liabilities asserted by Brokers.

(f)     In the event either Landlord or Tenant shall retain the services of an attorney to enforce any provision of this Lease, the prevailing party shall be reimbursed by the other in the amount of its reasonable attorneys' fees and other costs actually incurred.

(g)     Landlord and Tenant agree to provide to the other, within twenty (20) days after a written request therefor, an estoppel certificate certifying that this Lease is in full force and effect, that the same has not been amended (or, if it has, stating the amendments which have been made), that, to its actual knowledge, there are no defaults under this lease (or, if there are, specifying such defaults), and such other matters as may reasonably be requested.

31.     Security Deposit. Upon the execution of this lease, Tenant shall pay to Landlord the sum of **Nine Thousand and 00/100 Dollars ($9,000)**, which sum shall be held by Landlord without interest to Tenant as collateral security for Tenant's faithful performance hereunder.

(a)     In the event Tenant is in default hereunder beyond any applicable notice and cure period, the security deposit shall be forthwith applicable on account of sums which may be due Landlord by reason of such default and Landlord, without liability therefor, shall , upon written notification to Tenant setting forth the basis of said default, apply such amounts as needed to secure the default. Such application of the security deposit shall be in addition to all other rights and remedies accruing to Landlord hereunder. At the termination of Tenant's tenancy and upon surrender of the Leased Property as provided for in this Lease, the unapplied balance of the security deposit, if any, shall be returned to Tenant.

(b)    In the event of the sale or transfer of Landlord's interest in the building, Landlord shall have the right to transfer the security deposit to such purchaser or transferee, in which event Tenant shall look only to the new lessor for the return of the security deposit, and Landlord shall thereupon be released from all liability to Tenant for the return of such security deposit. It is understood that no part of the security deposit is to be considered as the last rental due under the term of this lease.

*[SIGNATURES APPEAR ON FOLLOWING PAGE]*

IN WITNESS WHEREOF, the parties have executed and delivered this Lease under seal as of the day and year first above written.

Signed, sealed and delivered
in the presence of:

_____
Unofficial Witness

_Heather M. Graham_
Notary Public

My Commission Expires

[AFFIX NOTARY SEAL]

**LANDLORD:**

_Omnisource Scrap Inc, LLC_, a
_North Carolina_ corporation

By: _M Murphy_
Name: _M.A. Hamerick_
Title: _V.P. Finance_

[CORPORATE SEAL]

Signed, sealed and delivered
in the presence of:

_Gary Wien_
Unofficial Witness

_Lyndsey Organ_
Notary Public

My Commission Expires: _September 6, 2015_

[AFFIX NOTARY SEAL]

**TENANT:**

Colonial Materials of Fayetteville, a North
Carolina corporation

By: _William E. Farrell_
William E. Farrell, General Manager

[CORPORATE SEAL]

## EXHIBIT "A"

The Leased Premises as it pertains to this Lease between Colonial Material of Fayetteville, Inc. ("Tenant") and OmniSource Southeast, LLC ("Landlord") is approximately 44,570 square feet of warehouse space contained in the "Building" (as hereinafter defined), together with all improvements and appurtenances thereto as shown within the hatched area on the attached **Exhibit A-1.**

The Building is situated in New Hanover County, North Carolina and has an address of 2820 US Highway 421 North, Wilmington, North Carolina 28401. The address of the parcel on which the Building is located is 2900 US Highway 421 N, Wilmington, NC, New Hanover County Parcel ID# R04000-003-013-000.

Said Building is situated on that parcel of real property more particularly described in that Special Warranty Deed recorded in Book 4685, Page 192-200 of the New Hanover County Registry

14



EXHIBIT A1

# EXHIBIT C1



EXHIBIT "B"

NOTICES

**LANDLORD:**

OmniSource Southeast, LLC
7575 West Jefferson Blvd.
Fort Wayne, Indiana 46804
Attention: Lee Goldstein
Email: lgoldstein@omnisourcese.com

With Copy to:

Barrett & McNagny LLP
215 E. Berry Street
Fort Wayne, Indiana 46802
Attention: Ronald J. Ehinger
Email: rje@barrettlaw.com

**TENANT:**

Colonial Materials of Fayetteville, Inc.
2820 US Highway 421 North
Wilmington, North Carolina 28401
Attention: _____
Email: _____

With Copy to:

_____
_____
Attention: _____
Email: _____